UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
————————————————————————————

AMIL DINSIO,

           Petitioner,

        v.

E.R. DONNELLY,

           Respondent.
————————————————————————————

AMIL DINSIO,

           Petitioner,

        v.

ANTHONY ZON,

           Respondent.
————————————————————————————

**REPORT AND
RECOMMENDATION**

03-CV-779
(LEK/VEB)

04-CV-013

## I. INTRODUCTION

Petitioner Amil Dinsio[1] commenced the above actions, which have been consolidated,

seeking habeas corpus relief under 28 U.S.C. § 2254.  Petitioner is an inmate at the Wende

Correctional Facility.  In 1997, he was convicted in a New York State court of Robbery in the

First Degree, Kidnapping in the Second Degree, and Criminal Use of a Firearm in the First

---

[1]Although Petitioner's Amended Petition is signed with his name and the words "pro se," it appears from the docket in case number 03-CV-779, that he was in fact represented by Timothy J. Lucas, Esq. in connection with the filing of that case.  See (Docket No.3 in 03-CV-779).  Thereafter, on March 4, 2004, Attorney Lucas made motion to withdraw as attorney and Lawrence M. Stern, Esq. was thereafter substituted as counsel for Petitioner.  (Docket No. 19).

Degree and was sentenced to a term of imprisonment.   Petitioner contends that his conviction was imposed in violation of his constitutional rights and should therefore be vacated.

This matter was referred to the undersigned by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), for a report and recommendation. (Docket No. 74).

## II. BACKGROUND

**A.     Facts**

The following factual summary is derived from the state court records provided in this case.

On October 9, 1996, at approximately 10:30 p.m., East Greenbush Police Officers Glen Rauch and Daniel Keegan were watching the "Shop-n-Save Plaza" in the Town of East Greenbush, New York as a result of a tip they had received regarding a black male that was "casing" one of its stores.  ($R^2$ at 122-23).  A van with Ohio license plates pulled into the parking lot and Petitioner and two other males, James Dinsio and James Quinn, exited the van.  (R at 686, 689-90, 738).

The three males then walked into a wooded area adjoining the plaza carrying a canvas bag and huddled together. Officers Rauch and Keegan approached the three males and identified themselves as police officers.  (R at 690, 962, 965, 1010-11).    When

---

[2]References preceded by "R" are to the pages of the Record on Appeal before the Third Department provided to this Court and prepared by Petitioner's appellate attorney, Stephen R. Coffey, Esq.

Petitioner and his brother James Dinsio, responded by running away, Officer Rauch pursued and ultimately caught up with them.[3] (R at 692-94).

As Officer Rauch attempted to restrain James Dinsio, he was grabbed from behind by Petitioner. (R at 699-700). During the ensuing scuffle, one of the brothers seized Rauch's gun, placed it against Rauch's head, and threatened to kill him. (R at 702-04). Rauch testified that he stopped struggling. One of his assailants pulled Rauch's coat over his head and Rauch was dragged down into a nearby culvert, where Petitioner and his brother held him while they hid from detection. (R at 703, 706). Eventually, Rauch heard officers searching the area and he called out to them and wrestled the gun away from James Dinsio. (R at 707). Thereafter, Petitioner and his brother were arrested.

On November 27, 1996, a Rensselaer County Grand Jury returned Indictment Number D-10216, charging Petitioner and his brother, James Dinsio, each with two counts of Robbery in the First Degree, in violation of New York Penal Law ("NYPL") §160.15(2) and §160.15(4);[4] one count of Kidnapping in the Second Degree, in violation of NYPL § 135.20, one count of Criminal Possession of a Weapon in the Second Degree, in violation of NYPL § 265.03, two counts of Criminal Use of a Firearm in the First Degree, in violation of NYPL § 265.09 (1) and § 265.09 (2), and one count of Criminal Possession of Burglar's Tools, in violation of NYPL § 140.35.

**B.    State Trial Court Proceedings**

---

[3]The third male, James Quinn, also ran and was immediately pursued and caught by Officer Keegan. (R at 691-92, 966, 969).

[4]Unless otherwise indicated, all references to the N.Y.P.L. are to McKinney 1998.

3

The Honorable Patrick J. McGrath, Rensselaer County Court Judge, presided over Petitioner's trial proceedings. Petitioner was represented at trial by Matthew Turner, Esq. of the Rensselaer County Public Defender's Office. James Dinsio was tried along with Petitioner. [5]

On June 16, 1997, the jury found Petitioner and James Dinsio guilty of one count of Robbery in the First Degree, one count of Kidnapping in the Second Degree, one count of Criminal Possession of a Weapon in the Second Degree, and one count of Criminal Use of Firearm in the First Degree. The jury acquitted the two men on the charge of possession of burglar tools. (R at 1544-1548).

On August 13, 1997, Petitioner was sentenced to twenty-five (25) years in prison for his conviction of Robbery, twenty-five (25) years for his conviction of Kidnapping (to run concurrent with his Robbery sentence), fifteen (15) years for his conviction of Criminal Possession of a Weapon (to run concurrent with the Robbery and Kidnapping sentences), and twenty-five (25) years for his conviction of Criminal Use of a Firearm (also to run concurrent with all his other sentences). (R at 1787-89).[6] Therefore, Petitioner's total aggregate sentence was twenty-five (25) years imprisonment.

## C.    State Appellate Proceedings

Petitioner, represented by Stephen R. Coffey, Esq., appealed his conviction to the Appellate Division, Third Department, of the New York State Supreme Court. On appeal,

---

[5] James Dinsio, Petitioner's brother, was represented at trial by Gasper Castillo, Esq. and by William Carter, Esq. of the Castillo and Siegel law firm from Albany, New York.

[6] For his convictions, James Dinsio received the exact same sentences.

4

Petitioner asserted the following six grounds: (1) the prosecution failed to disclose <u>Rosario</u> material, (2) the trial court improperly denied Petitioner's motion for a probable cause hearing, (3) the prosecution failed to preserve evidence, (4) the convictions were against the weight of the evidence, (5) the trial court erred with respect to the jury charge, and (6) Petitioner received ineffective assistance of trial counsel.  Petitioner sought permission to file a supplemental *pro se* brief regarding alleged perjured testimony before the Grand and Petit Juries, but permission was denied by the Third Department.

In a decision issued on August 2, 2001, the Appellate Division, Third Department, reversed Petitioner's conviction for Criminal Possession of a Weapon in the Second Degree because it was "an inclusory concurrent count of the charge of criminal use of a firearm in the first degree." <u>People v. Dinsio</u>, 286 A.D.2d 517, 520, 729 N.Y.S. 2d 208, 211 (3d Dep't 2001). The Appellate Division also reduced Petitioner's Robbery conviction from first to second Degree, finding that "while defendants were shown to have robbed Rauch of his weapon, there was no proof that they robbed him *with a weapon*," which was a required element of first degree robbery. <u>Dinsio</u>, 729 N.Y.S 2d at 211 (emphasis added).  The Appellate Division affirmed the convictions for kidnapping and criminal use of a firearm and found Petitioner's remaining arguments "without merit." <u>Id.</u>

Petitioner's application for leave to appeal to the Court of Appeals was denied on January 11, 2002.  <u>People v. Dinsio</u>, 97 N.Y.2d 703 (2002).  Petitioner then sought certiorari to the United States Supreme Court, which was denied on June 24, 2002.  <u>Dinsio v. New York</u>, 536 U.S. 942 (2002).

Thereafter, on September 23, 2002, Petitioner filed a petition with the Appellate Division, Third Department for a writ of error coram nobis, claiming ineffective assistance

of appellate counsel.  The Third Department denied this petition on November 1, 2002, and leave to appeal to the Court of Appeals was denied on January 30, 2003.

### D.  Federal Habeas Corpus Proceedings

Petitioner, represented by Timothy Lucas, Esq., commenced this action on June 24, 2003, by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1).  Petitioner was ordered to file an Amended Petition to correct several clerical errors. (Docket No. 4).  Petitioner filed his Amended Petition on August 22, 2003. (Docket No. 5).  Respondent filed submissions in opposition on January 5, 2004.  (Docket No. 13).

On January 6, 2004, while the above case was still pending, Petitioner filed another Petition for a Writ of Habeas Corpus, claiming one ground for relief, ineffective assistance of appellate counsel.  That case was filed under the case number 04-CV-0013. (Docket No. 14).[7]  On January 27, 2004, by order of the Honorable Lawrence E. Kahn, United States District Judge for the Northern District of New York, case number 04-CV-0013 was consolidated with the originally filed case, with the first filed case serving as the lead case. (Id.).  Petitioner filed a Traverse on April 6, 2004.  (Docket No. 29).

On February 13, 2004, Attorney Lucas moved to withdraw as Petitioner's attorney. This motion was granted on March 4, 2004.  (Docket No. 16).   Thereafter, Petitioner moved for a stay to allow him to obtain another attorney.   (Docket No. 38).  This motion was granted, and Petitioner moved for a further stay once he obtained counsel.  (Docket

---

[7]Docket references contained herein are references to the lead case, Case No. 03-CV-779.

No. 41, No. 50, No. 52).  Petitioner, through his new attorney, Lawrence M. Stern, then filed a seventy-eight page "Supplemental Memorandum of Law and Fact in Support of Habeas Corpus Petition" raising new claims not stated in his original petition.  (Docket No. 59). Thereafter, Respondent filed further submissions in response to the memorandum of law and in further opposition to the Amended Petition. (Docket No. 66).

For the reasons that follow, the Court recommends that the Amended Petition be DENIED.

**III. DISCUSSION**

**A.    Federal Habeas Corpus Standard**

Federal habeas corpus review of a state court conviction is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under AEDPA, federal courts must give substantial deference to a state court determination that has adjudicated a federal constitutional claim "on the merits."  28 U.S.C. § 2254(d); Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir. 2001).  The Second Circuit has stated that an "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim."  Sellan, 261 F.3d at 313 (quotation omitted).  The Second Circuit has also held that even a one-word denial of a petitioner's claim is sufficient to constitute an "adjudication on the merits" for purposes of AEDPA.  Id. at 312-313.

Specifically, AEDPA requires that where a state court has adjudicated the merits of a Petitioner's federal claim, habeas corpus relief may not be granted unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

While both AEDPA and its predecessor statute recognize that a presumption of correctness shall apply to state court findings of fact, Whitaker v. Meachum, 123 F.3d 714, 715 n. 1 (2d Cir. 1997), AEDPA also requires a Petitioner to rebut that presumption by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1); LanFranco v. Murray, 313 F.3d 112, 117 (2d Cir. 2002).  A presumption of correctness applies to findings by both state trial and appellate courts.  Galarza v. Keane, 252 F.3d 630, 635 (2d Cir. 2001); Whitaker, 123 F.3d at 715 n.1.

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court defined the phrases "contrary to" and "unreasonable application of" clearly established federal law.  A state court decision is "contrary to clearly established federal law . . . if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts."  Id.

A state court decision involves "an unreasonable application of" Supreme Court case law if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case."  Id.

Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision

8

applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

**B.    Petitioner's Claims**

Petitioner asserts seven (7) claims in support of his request for habeas corpus relief:[8] (1) prosecutorial misconduct; (2) judicial misconduct; (3) that the prosecutor withheld exculpatory evidence (Brady Claim);  (4) that the failure to conduct a probable cause hearing deprived him of a fair trial; (5) ineffective assistance of trial counsel; (6) that there was insufficient evidence to convict him; and (7) ineffective assistance of appellate counsel. Each claim will be addressed in turn.

**1.    Prosecutorial Misconduct**

In his first claim for relief, Petitioner alleges that the prosecution fabricated witness

---

[8]Petitioner asserted six (6) claims in the Amended Petition filed in the lead case, 03-CV-779.  The Petition filed in case number 04-CV-013 asserts one claim.  As noted above, Petitioner's present attorney, who did not represent Petitioner when these cases were originally filed, submitted a lengthy supplemental memorandum of law and facts on September 17, 2006, more than three (3) years after the first case was filed.  (Docket No. 59).  The "supplemental" memorandum purports to raise claims not contained in the petitions and offers new factual and legal arguments in support of previously-raised claims.  Petitioner never sought leave to amend his petitions.  It was improper to raise new claims and arguments in a supplemental memorandum.  Accordingly, the new claims and arguments advanced in the supplemental memorandum are deemed to have been waived and they have not been considered by this Court. See ABN AMRO VERZEKERINGEN BV v. Geologistics Ams., Inc., 485 F.3d 85, 97, n. 12 (2d Cir. 2007) ("We decline to consider an argument raised for the first time in a reply brief"); Clubside, Inc. v. Valentin, 468 F.3d 144, 160 (2d Cir.2006) ("[W]e generally do not consider arguments that are raised for the first time in a reply brief"); Fisher v. Kanas, 487 F. Supp.2d 270, 278 (E.D.N.Y. 2007) (collecting cases).

testimony and/or suborned perjury.  Petitioner contends that this perjured testimony was presented at the preliminary hearing, before the grand jury, and at trial.  In support of this claim, Petitioner notes alleged inconsistencies in the grand jury testimony offered by Officer Rauch and the other police officers involved in Petitioner's apprehension and arrest. Petitioner further suggests that certain details of the officers' testimony was contradicted by police dispatch records.  Lastly, Petitioner suggests that a portion of an audiotape recording of the officers' radio calls was purposely rendered inaudible either by the prosecutor or with the prosecutor's knowledge.

### a.    Exhaustion Requirement

As a threshold matter, Respondent argues that this claim should be denied because Petitioner failed to exhaust his state court remedies, which is required prior to obtaining habeas review. See Jimenez v. Walker, 458 F.3d 130, 148 (2d Cir. 2006) ("Before a state prisoner may obtain a writ of habeas corpus from a federal court, the prisoner must exhaust his remedies in state court.").

In support of this argument, Respondent correctly notes that the prosecutorial misconduct claim was not included in the brief filed by Petitioner's appellate counsel with the Appellate Division.  However, Petitioner did raise the claim in a *pro se* supplemental brief that he submitted to the Appellate Division.  Although the Appellate Division declined to consider the supplemental brief and the Court of Appeals did not grant leave to review that denial, the prosecutorial misconduct claim was nevertheless "presented" in the state court proceedings.

"[T]he fact that the state court did not address the claim on the merits and rejected it on a state procedural ground, or did not actually rule on the claim either on substantive

or procedural grounds, but had a fair opportunity to address the claim, does not render a claim unexhausted." Carr v. Fischer, 283 F. Supp.2d 816, 828 (E.D.N.Y. 2003); see also Dorsey v. Kelly,112 F.3d 50, 52 (2d Cir. 1997) ("A petitioner may satisfy the exhaustion requirement by presenting his federal claim in a pro se supplemental brief, even if he has an attorney."); Clemmons v. Delo, 124 F.3d 944, 948 (8th Cir. 1997) (holding that petitioner exhausted Brady claim by attempting to present claim in *pro se* supplemental brief, even though submission was rejected by state appellate court).

Accordingly, this Court finds that Petitioner's prosecutorial misconduct claim was exhausted for purposes of AEDPA review.

### b.    Procedural Bar

Even though the claim was exhausted, this Court must still consider whether it is nevertheless procedurally barred because the Appellate Division's refusal to consider the *pro se* brief was based upon a state procedural rule.

"Where the highest state court that rendered a judgment in the case 'clearly and expressly states that its judgment rests on a state procedural bar,' such procedural default constitutes independent and adequate state grounds to deny habeas relief." Corney v. Henri, 05-CV-338, 2007 WL 1388118, at *5 (N.D.N.Y. May 9, 2007) (quoting Harris v. Reed, 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)); see also Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir.1996); Levine v. Commissioner of Corr. Servs., 44 F.3d 121, 126 (2d Cir.1995).

In the present case, Appellate Division's refusal to consider Petitioner's *pro se* supplemental brief was based upon the application of a state procedural rule, namely, Rule

800.8 of the Appellate Division, Third Department's Rules of Practice. (SCR at 185).[9]  As such, this might arguably be considered an adequate and independent state ground to deny habeas review of the prosecutorial misconduct claim.

However, to preclude federal habeas review and constitute an adequate and independent state ground, a state procedural rule must be "'firmly established and regularly followed." James v. Kentucky, 466 U.S. 341, 348-51, 104 S.Ct. 1830, 1835-37, 80 L.Ed.2d 346 (1984); see also Edwards v. Fischer, 414 F. Supp.2d 342, 348 (S.D.N.Y. 2006).

This Court finds that denial of leave to file a supplemental brief under Rule 800.8 of the Appellate Division's Rules of Practice does not constitute an adequate and independent state law ground.  The Rule provides that the parties' briefs must adhere to certain page limits, "[e]xcept with permission of the court."  Presumably, the Appellate Division, in the exercise of its decision, grants such permission on some occasions and denies it on others.

This type of discretionary rule, which specifically contemplates non-compliance, cannot be considered "firmly established" for purposes of barring federal habeas review. See Gersten v. Senkowski, 299 F. Supp.2d 84, 98 (E.D.N.Y. 2004) ("State procedural rules are insufficient to bar federal review of a claim if the rules . . . allow noncompliance . . . .") (citing Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 233-34, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969)).  As such, this Court finds that petitioner's prosecutorial misconduct claim is not procedurally barred.

### c.    Merits of Prosecutorial Misconduct Claim

---

[9]Citations to "SCR" refer to the State Court Records supplement provided to this Court by Respondent.

The habeas court's scope of review as to claims of prosecutorial misconduct is quite limited. "[P]rosecutorial misconduct cannot give rise to a constitutional claim unless the prosecutor's acts constitute 'egregious misconduct.'" Miranda v. Bennett, 322 F.3d 171, 180 (2d Cir. 2003); see also Floyd v. Meachum, 907 F.2d 347, 353 (2d Cir.1990) ("The appropriate standard of review for a claim of prosecutorial misconduct on a writ of habeas corpus is the narrow one of due process, and not the broad exercise of supervisory power.") (internal quotation marks and citations omitted); accord Tankleff v. Senkowski, 135 F.3d 235, 252 (2d Cir.1998).

Petitioner alleges that the prosecutor either engaged in a conspiracy to offer fabricated testimony or, in the alternative, allowed witness testimony that he knew, or reasonably should have known, was perjured.  If proven, such conduct would certainly rise to the level of prosecutorial misconduct.  However, Petitioner bears the burden of showing (1) that one or more of the witnesses actually committed perjury and (2) that the prosecutor either knew or reasonably should have known of the perjury.

In other words, Petitioner has initial "burden of demonstrating, by a preponderance of evidence, that the witness committed perjury, and, in determining whether perjury occurred, a court must 'weigh all the evidence of perjury before it.'" Anekwe v. Phillips, 05-CV-2184, 2007 WL 1592973, at *6 (E.D.N.Y. May 31, 2007) (quoting Ortega v. Duncan, 333 F.3d 102, 106-07 (2d Cir.2003)). Then, Petitioner must establish that "the prosecution knew, or should have known, of the perjury," and "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." Id. (quoting United States v. Agurs, 427 U.S. 97, 103 (1976)).

Petitioner has not established by a preponderance of the evidence that any witness

13

committed perjury.   Rather, Petitioner has simply pointed out inconsistences in the testimony of certain witnesses and described alleged discrepancies between the testimony and the dispatch records.  As a matter of law, this is insufficient to establish that perjury was committed.

Indeed, the Second Circuit has held that "even a direct conflict in testimony does not in itself constitute perjury." United States v. Gambino, 59 F.3d 353, 365 (2d Cir.1995); see also Moore v. Greiner, 02-CV-6122, 2005 WL 2665667, at *13 (S.D.N.Y. Oct. 19, 2005)("At most, Petitioner has shown that [witness]'s grand jury and trial testimony regarding her apartment number were inconsistent, but inconsistencies between a witness's statements before a grand jury and at trial do not warrant the inference that the prosecutor knowingly used false testimony.").

In addition, Petitioner has offered no plausible motive or explanation as to why the police officers in question and/or the District Attorney would engage in a conspiracy and/or commit perjury relative to Petitioner's prosecution.  Petitioner has also offered no proof that the audiotape in question was deliberately distorted and has provided no *bona fide* motive or explanation as to why the police officers or prosecutor would engage in such conduct. Petitioner's suggestion that the distorted portion of the tape contains exculpatory evidence is  sheer speculation.[10]

Lastly, Petitioner's trial counsel strenuously argued to the jury that the testimony offered by the prosecution was inconsistent and therefore not credible.  (R at 1394, 1396-97, 1398-99, 1407-08).  Indeed, the climax of counsel's summation was the statement that

---

[10]In fact, Petitioner's speculation concerning the inaudible portion amounts to yet another attempt to argue that certain testimony was allegedly inconsistent.  Even if this is correct, it would not entitle Petitioner to habeas relief, for the reasons set forth above.

"when you go back to the jury room and deliberate and say, boy the stories don't match, and there is some doubt here about what the story really is. There is your answer, ladies and gentlemen.  That is reasonable doubt." (R at 1408).  The jury evaluated the credibility of the witnesses and found that the proof was sufficient.

This Court must defer to the jury's evaluation of witness credibility, as well as the jury's assessments regarding the weight of the evidence.  Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir.1996) (dismissing habeas claim because "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal; . . . [courts] must defer to the jury's assessments of both of these issues").

Accordingly, this Court finds that Petitioner is not entitled to habeas relief based upon his prosecutorial misconduct claim and this claim should therefore be DENIED.

### 2.    Judicial Misconduct

In his second claim for relief, Petitioner asserts that the trial court knowingly permitted the prosecution to convict Petitioner with "fabricated trial testimony."  Petitioner also alleges that the trial court improperly sentenced Petitioner "knowing that the indictment was secured with fabricated grand jury testimony."[11]

To establish that a judge has engaged in misconduct sufficient to warrant redress, a party must typically demonstrate that the judge displayed "such a high degree of favoritism or antagonism as to make fair judgment impossible." Liteky v. United States, 510 U.S. 540, 555 (1994); see also Withrow v. Larkin, 421 U.S. 35, 47 (1975) (to succeed on

---

[11]This Court will consider this claim as exhausted and not procedurally barred for the reasons set forth above in Section III.B.1 (a) & (b).

a judicial misconduct claim, a party must "overcome a presumption of honesty and integrity in those serving as adjudicators").  In reviewing a judicial misconduct claim, courts are to presume that public officials have properly discharged their official duties.  See Bracy v. Gramley, 520 U.S. 899, 909 (1997) (internal quotations and citations omitted).

To prevail on a claim based on judicial misconduct, a habeas petitioner must demonstrate that the trial judge engaged in conduct so "fundamentally unfair" that it violated the due process requirements of the United States Constitution.  See Daye v. Attorney Gen. of N.Y., 712 F.2d 1566, 1570-71 (2d Cir.1983); Salahuddin v. Strack, No. 97-CV-5789, 1998 WL 812648, at *8 (E.D.N.Y. Aug. 12, 1998).

For the reasons set forth above in Section III.B.1 (c), this Court finds that Petitioner has failed to demonstrate that the witnesses in question committed perjury.  As such, *ipso facto*, Petitioner has not proven that the trial court engaged in misconduct by permitting perjury.  Indeed, Petitioner's entire argument in this regard appears to be based upon the fact that the trial court read the grand jury minutes and heard the trial testimony and, thus, "knew of the perjury."

This sort of conclusory allegation is plainly insufficient to overcome the presumption that the trial court properly discharged its duties.  See, e.g. White v. Walker, 01-CV-0238, 2007 WL 169702, at *17 (N.D.N.Y. Jan. 18, 2007) ("[T]o succeed on a judicial misconduct claim, a party must 'overcome a presumption of honesty and integrity in those serving as adjudicators'") (quoting Withrow v. Larkin, 421 U.S. 35, 47, 95 S.Ct. 1456, 1464 (1975)); Love v. Kuhlman, 99-CIV-11063, 2001 WL 1606759, at *5 (S.D.N.Y. Dec. 12, 2001) ("Beyond his mere conclusory allegation, however, Love does not allege any facts that would allow this Court to conclude that his sentencing resulted from an act of judicial

16

misconduct.")

Lastly, as with the claims regarding the police officers and District Attorney, Petitioner has offered no credible explanation or motive as to why the trial court would knowingly tolerate and/or facilitate perjured testimony in connection with Petitioner's case. As such, this Court finds that Petitioner's claim for relief based upon judicial misconduct should be DENIED.


### 3.    __Brady__ Claim

Petitioner's third claim for relief is that the prosecutor knowingly withheld exculpatory evidence, *i.e.* Brady material.

Under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the prosecution is obligated to disclose material evidence that is favorable to the accused. The Supreme Court has held that "there are three components of a true Brady violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued." Id.; see also Boyette v. Lefevre, 246 F.3d 76, 89 (2d Cir.2001).

However, "the prosecution is not required to disclose evidence it does not possess or of which it is not aware." Sturdivant v. Barkley, No. 04-CV-5659, 2007 WL 2126093, at *6 (E.D.N.Y. July 24, 2007) (citing Smith v. Edwards, No. 98 Civ. 7962, 2000 WL 709005, at *6 (S.D.N.Y. May 31, 2000)).

In the present case, Petitioner contends that the prosecution failed to disclose "knowledge of the fabricated grand jury testimony" and knowledge that the audiotape of the

police radio calls was "distorted on purpose."   As set forth above, this Court finds that Petitioner has failed to establish that testimony was "fabricated" or that there was any intentional distortion of the audiotape.

Petitioner's allegation that the prosecution knew of perjured testimony and/or doctored evidence, and then withheld the same from Petitioner, amounts to nothing more than mere speculation, which is insufficient to sustain a <u>Brady</u> claim.  <u>Mallet v. Miller</u>, 432 F. Supp.2d 366, 377 (S.D.N.Y. 2006) ("[T]he mere speculation that exculpatory evidence was withheld is insufficient to warrant habeas relief.") (citing <u>Strickler v. Greene</u>, 527 U.S. 263, 286, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); <u>United States v. Avellino</u>, 136 F.3d 249, 261 (2d Cir.1998) ("In the absence of a proffer by [defendant] of any nonspeculative basis for inferring that ... the government had not made available to him all pertinent material in its possession, it was well within the discretion of the court to conclude that no evidentiary hearing was necessary.")).

As such, this Court recommends that Petitioner's <u>Brady</u> claim be DENIED.


### 4.       Failure to Conduct Probable Cause Hearing

In his fourth claim for relief, Petitioner contends that his Fourth Amendment rights were violated by the trial court's refusal to conduct a probable cause hearing.  The factual background with respect to this claim may be summarized as follows:

In an omnibus pre-trial motion, Petitioner's trial counsel moved, *inter alia*, for a ruling that the search and seizure of Petitioner and his co-defendant, James Dinsio, was unsupported by probable cause and suppressing all fruits of the search and seizure. (R at 182-184).  Essentially, Petitioner, through trial counsel, argued that Officer Rauch lacked

probable cause to seize Petitioner because "immediately prior to [Petitioner's] contact with the police, [he] was not in obvious possession of any illegal item." (R at 182-183).

On February 7, 1997, the trial court issued a Decision and Order, which, *inter alia*, denied Petitioner's suppression motion.  The trial court found that Petitioner had "failed to set forth sworn allegations of fact showing a legal basis for suppression pursuant Section 710.60 of the Criminal Procedure Law." (R at 195).

Petitioner, through his trial attorney, sought reconsideration of this decision (R at 216).  The trial court denied reconsideration in a detailed, written decision dated May 21, 1997. (R at 233-235).  In sum, the trial court concluded that Petitioner's moving papers were "replete with legal conclusions with a total absence of specific sworn allegations of fact." (R at 235).

On appeal, the Appellate Division found that even if the trial court's failure to conduct a hearing was error, any such error was "harmless since any taint resulting from the alleged illegal pursuit and seizure was fully attenuated by [Petitioner's] subsequent independent actions." Dinsio, 729 N.Y.S.2d at 210.  In addition, the Appellate Division further concluded that the error was harmless because "the evidence to be suppressed would be pertinent only to charges based on defendants' conduct prior to the seizure and for which defendants were not convicted." Id.  Specifically, the court noted:

> All of the conduct giving rise to the charges considered at trial, except a misdemeanor charge of possession of burglar's tools, occurred after the pursuit and initial seizure. Since defendants were acquitted of the charge of possession of burglar's tools and all of their convictions arose from acts committed subsequent to the seizure, the evidence supporting defendants' convictions is not directly related to the alleged illegal seizure.

Id.

Petitioner argues that the determinations of the state courts were erroneous and contends that the failure to conduct a suppression hearing violated his Fourth Amendment rights.  However, in <u>Stone v. Powell</u>, 428 U.S. 465, 482 (1976), the Supreme Court held that "where the State has provided an *opportunity* for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." (emphasis added).

Following <u>Stone</u>, the Second Circuit developed a "litmus test to discern when a state prisoner has been denied an opportunity for full and fair litigation of his fourth amendment claims." <u>Capellan v. Riley</u>, 975 F.2d 67, 69-71 (2d Cir. 1992)(citing <u>Gates v. Henderson</u>, 568 F.2d 830 (2d Cir. 1977)(en banc)).

The Second Circuit has concluded that review of Fourth Amendment claims presented by habeas petitioners would be undertaken in only one of two instances: (a) if the State provided no corrective procedures at all to redress the alleged Fourth Amendment violations; or (b) if the State has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an "unconscionable breakdown in the underlying process." <u>Id.</u> (quoting <u>Gates</u>, 569 F.2d at 840 and citing <u>McPhail v. Warden Attica Correctional Facility</u>, 707 F.2d 67, 70 (2d. Cir 1983)).

"The federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in N.Y.Crim. Proc. Law § 710. 10 *et seq.* (McKinney 1984 & Supp.1988), as being facially adequate.'" <u>Capellan</u>, 975 F.2d at 70 n.1 (quoting <u>Holmes v. Scully</u>, 706 F. Supp. 195, 201 (E.D.N.Y. 1989) and citing <u>Gates</u>, 568 F.2d at 837 & n.4; <u>Shaw v. Scully</u>, 654 F. Supp. 859, 864 (S.D.N.Y. 1987)).

20

As set forth above, Petitioner's claim that police officers lacked probable cause with respect to the initial seizure was raised and reviewed twice before the trial court.  The claim was then raised, reviewed, discussed, and decided by the Appellate Division.  Accordingly, New York State clearly provided corrective procedures to address Petitioner's Fourth Amendment claim.  See  Ferron v. Goord, 255 F. Supp.2d 127, 131-32 (W.D.N.Y. 2003) (holding that petitioner's "various applications before the trial and appellate state courts challenging the search warrant clearly show that he was given an opportunity for a 'full and fair' litigation of his Fourth Amendment claims.").

Therefore, the sole question presented with respect to Petitioner's Fourth Amendment claim is whether there was an "unconscionable breakdown" in the corrective process provided by New York State.  An "'unconscionable breakdown in the state's process must be one that calls into serious question whether a conviction is obtained pursuant to those fundamental notions of due process that are at the heart of a civilized society.'"  Id. (quoting Cappiello v. Hoke, 698 F. Supp. 1042, 1050 (E.D.N.Y.1988), aff'd, 852 F.2d 59 (2d Cir.1988)(per curiam).

Petitioner's argument is that there was an unconscionable breakdown because : (1) the trial court refused to conduct a suppression hearing, (2) the Appellate Division incorrectly concluded that the failure to hold a hearing was harmless, and (3) his trial counsel was ineffective with respect to the protection of Petitioner's Fourth Amendment rights.

However, the Second Circuit has held that a "mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process." Capellan, 975 F.2d at 72.  The mere fact that the trial court denied the

request for a suppression hearing does not establish an unconscionable breakdown, particularly where, as here, the trial court's decision was supported by a reasoned method of inquiry into the facts and law. Jones v. Barkley, 99-CV-1344, 2004 WL 437468, at *5 (N.D.N.Y. Feb. 27, 2004); Ferron, 255 F. Supp.2d at 131-32;

Moreover, even assuming *arguendo* the Appellate Division erroneously concluded that the lack of a hearing was harmless, Petitioner "cannot gain federal review of a Fourth Amendment claim simply because the federal court may have reached a different result." Capellan, 975 F.2d at 72 (citing Gates, 568 F.2d at 840); see also Cappiello v. Hoke, 698 F.Supp. 1042, 1050-51 (E.D.N.Y. 1988) ("[I]t is not for this court to review the correctness of the first Appellate Division panel's determination on the merits of [petitioner's] Fourth Amendment claim").

Lastly, Petitioner's argument that the alleged ineffectiveness of his trial counsel constituted an "unconscionable breakdown" also fails. "[C]ourts within this circuit have refused to equate ineffective assistance of counsel with unconscionable breakdown." Shaw v. Scully, 654 F. Supp. 859, 865 (S.D.N.Y. 1987) (citing Jackson v. Scully, 781 F.2d 291, 297 (2d Cir.1986)); see also Allah v. LeFevre, 623 F. Supp. 987, 991 (S.D.N.Y. 1985) ("[I]t is plain from the majority opinion in Gates that the [Second Circuit] had something other than ineffective assistance of counsel in mind when it speculated that an unconscionable breakdown in state process might permit federal habeas review.").

In sum, this Court finds that habeas review of Petitioner's Fourth Amendment claim is barred under the Stone v. Powell doctrine and should accordingly be DENIED.


**5.    Ineffective Assistance of Trial Counsel**

22

Petitioner's fifth claim alleges that his trial counsel was unconstitutionally ineffective. To prevail on a claim of ineffective assistance of counsel within the framework established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), a habeas petitioner must satisfy a two-part test.  First, the petitioner must demonstrate that counsel's performance was so deficient that counsel was not functioning as "counsel" within the meaning of the Sixth Amendment to the Constitution. Id. at 688.  In other words, a petitioner must show that his attorney's performance "fell below an objective standard of reasonableness." Id.

Second, the petitioner must show that counsel's deficient performance prejudiced him. Id. at 694.  To establish the "prejudice" prong of the Strickland test, a petitioner must show that a "reasonable probability" exists that, but for counsel's error, the outcome of the trial would have been different. Id. at 694.  The issue of prejudice need not be addressed, however, if a petitioner is unable to demonstrate first that his counsel's performance was inadequate. "[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

In the present case, Petitioner argues that his trial counsel was ineffective in two respects: first, by failing to review and/or comprehend the significance of the allegedly manipulated audiotape; second, by failing to seek dismissal of the indictment based upon the alleged perjury committed by the police officer witnesses.

As noted above, Petitioner contends that an audiotape of the police department's dispatches on the night in question was deliberately manipulated, rendering a portion of the tape inaudible.  However, Petitioner offers no evidence that the tape was intentionally

distorted and no plausible explanation as to why the prosecution, police department, or anyone else with access to the tape would engage in such conduct.

In sum, Petitioner's suggestion that the inaudible portion of the audiotape would have shown that the police officer witnesses were lying is pure speculation.  Indeed, Petitioner states that his trial counsel advised that he had listed to the tape "and that it contained nothing helpful."  On the record before this Court, trial counsel's judgment in this regard appears to have been entirely reasonable and there is no indication that further investigation would have led to exculpatory evidence.  Petitioner's conclusory allegations regarding the audiotape are insufficient to sustain an ineffective assistance of counsel claim. See Mallet v. Miller, 432 F. Supp.2d 366, 388 (S.D.N.Y. 2006) ("A claim of ineffective assistance cannot be supported by conclusory assertions alone. It is too easy for a defendant to claim after the fact, without supporting evidence, that he provided leads and information to his counsel that would have resulted in his exoneration if used.").

With respect to trial counsel's failure to seek dismissal of the indictment based upon perjured testimony, this claim fails because, as discussed above, Petitioner has not established that any perjury was actually committed.  As such, with respect to both the audiotape and the alleged perjury, Petitioner's trial counsel was not obligated to advance arguments that were frivolous and unlikely to succeed.  Moreover, given the strength of the prosecution's case, as discussed in detail below, Petitioner has failed to demonstrate the outcome of the trial would have been different if his trial counsel had raised these issues. See Mallet, 432 F. Supp. 2d at 388-89.

Accordingly, this Court finds that Petitioner is not entitled to relief based upon his claim of ineffective assistance of trial counsel and this claim should be DENIED.

### 6.       Sufficiency of the Evidence

In his sixth claim for habeas relief, Petitioner challenges the constitutional sufficiency of the evidence against him.[12]   A habeas petitioner challenging the sufficiency of the evidence bears "a very heavy burden."   Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir.2002) (quotation marks omitted); Einaugler v. Supreme Court of New York, 109 F.3d 836, 840 (2d Cir.1997) (quotation marks omitted).

A habeas challenge to the sufficiency of the evidence "does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781 (1979) (quoting Woodby v. INS, 385 U.S. 276, 282, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966)).  Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (emphasis in original).

Thus, a habeas court must uphold a conviction unless, upon the record evidence adduced at trial, no rational trier of fact could have found that the prosecution established the defendant's guilt beyond a reasonable doubt. See id.; accord Ponnapula, 297 F.3d at 179 ("[W]e review the evidence in the light most favorable to the State and [hold that] the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof

---

[12]Petitioner also references the fact that his convictions were allegedly against the weight of the evidence.  Although this Court will discuss and analyze the sufficiency of the evidence claim, Petitioner's weight of the evidence claim is not cognizable on federal habeas review and must be dismissed.  See, e.g., Ex parte Craig, 282 F. 138, 148 (2d Cir.1922) (holding that "a writ of habeas corpus cannot be used to review the weight of evidence ..."), aff'd, 263 U.S. 255, 44 S.Ct. 103, 68 L.Ed. 293 (1923); Garrett v. Perlman, 438 F.Supp.2d 467, 470 (S.D.N.Y.2006) (same); Douglas v. Portuondo, 232 F.Supp.2d 106, 116 (S.D.N.Y.2002) (same); Garbez v. Greiner, No. 01 Civ. 9865, 2002 WL 1760960, at *8 (S.D.N.Y. July 30, 2002).

of guilt beyond a reasonable doubt based on the evidence adduced at trial.").

In the present case, Petitioner argues that the only evidence supporting his conviction was the testimony of the victim, Officer Rauch.  Petitioner contends that Officer Rauch committed perjury at the preliminary hearing and before the grand jury and therefore cannot be considered a credible witness for the prosecution.  As noted above, Petitioner's conviction, as modified on appeal, was for Robbery in the Second Degree, Kidnapping in the Second Degree, and Criminal Use of a Firearm in the First Degree. The legal sufficiency of the evidence supporting each count will be addressed in turn.

### a.   Robbery

The jury convicted Petitioner of Robbery in the First Degree.  The Appellate Division found that "while defendants were shown to have robbed Rauch of his weapon, there was no proof that they robbed him with a weapon." Id.  As such, the evidence was not sufficient to sustain a conviction for Robbery in the First Degree, which requires proof that the robbery was committed through the use of a firearm.  N.Y.P.L. § 160.15.

However, the Appellate Division concluded that "the evidence did establish robbery in the second degree which, as applicable here, requires only a showing that a person 'forcibly steals property and . . . is aided by another person actually present." Dinsio, 729 N.Y.S. 2d at 519 (quoting N.Y.P.L. § 160.10 (1)).

Petitioner has failed to show that the Appellate Division's conclusion regarding the sufficiency of the evidence supporting the Second Degree Robbery conviction was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or that the decision was based on an unreasonable determination of the facts in the light of the evidence presented.

26

Under the New York Penal Law, "[a] person is guilty of robbery in the second degree when he forcibly steals property and when . . . [h]e is aided by another person actually present." N.Y.P.L. § 160.10.  At trial, Officer Rauch testified that after a chase, he was in the process of arresting James Dinsio when Petitioner approached from the rear and attacked.  (R at 699-700, 763-64).  James Dinsio joined in the struggle and the three men engaged in a brief altercation.  (R at 700, 766-767).  James Dinsio and Petitioner pinned Officer Rauch to the ground.  (R at 700).  The police officer's gun was then removed from its holster and placed against the back of his head. (R at 701.)  Petitioner told Officer Rauch to "shut up" and then said "Do you feel that?  This is your gun." (R at 706).

Based upon the testimony of Officer Rauch, standing alone, any rational trier of fact could have concluded beyond a reasonable doubt that Petitioner forcibly stole property (*i.e.* Officer Rauch's gun) while aided by another person actually present, namely, James Dinsio.[13]

Petitioner's unsupported allegations of perjury and attacks on Officer Rauch's credibility are insufficient to sustain a claim for habeas relief.  See  Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir.1996) (dismissing habeas claim because "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal; stating that it must defer to the jury's assessments of both of these issues); Webster v. McCoy, 03-CV-00440, 2007 WL 2292994, at *2 (N.D.N.Y. Aug 6. 2007) ("Where, as in this case, the question is one of credibility, the finding of the jury carries the

---

[13]Indeed, given the age disparity between Petitioner and Officer Rauch, which was described as "considerable" (R at 767), it appears unlikely that Petitioner, who was in his sixties, could have stolen the gun without James Dinsio's assistance.

day.").

      **b.**    **Kidnapping**

Petitioner was also found guilty of Kidnapping in the Second Degree.  On appeal, Petitioner, through appellate counsel, argued that this conviction was improper under the "merger doctrine."[14]  The Appellate Division rejected that argument, finding that the merger doctrine was inapplicable because "the crime of robbery was committed and completed prior to defendants' subsequent activity of subduing Rauch, dragging him into a culvert and holding him there with a deadly weapon in an effort to avoid apprehension." Dinsio, 729 N.Y.S. 2d at 520.  The Appellate Division further found that "there was sufficient evidence" to support Petitioner's conviction for kidnapping in the second degree. Id.

As a threshold matter, there was clearly sufficient evidence to convict Petitioner of Kidnapping in the Second Degree pursuant to NYPL § 135.20, which simply requires proof that the defendant abducted another person.  Officer Rauch's testimony, as discussed above, was sufficient to establish that he was abducted by Petitioner.  To the extent that Petitioner seeks relief based upon the claim that Officer Rauch committed perjury or was otherwise not credible, that argument is unavailing for the reasons outlined above.

Second, Petitioner's claim that the Appellate Division erred with respect to its interpretation and application of the merger doctrine is purely a claim under New York State law.  Such claims are not cognizable on federal habeas review.  See Beverly v. Walker, 899 F. Supp. 900, 908 (N.D.N.Y. 1995) ("[F]ederal habeas corpus relief does not lie for errors

---

[14]The Appellate Division explained the merger doctrine as follows: "The merger doctrine is intended to preclude conviction for kidnapping based on acts which are so much the part of another substantive crime that the substantive crime could not have been committed without such acts and that independent criminal responsibility may not fairly be attributed to them." Dinsio, 729 N.Y.S.2d at 519.

of state law that do not rise to the level of federal constitutional violations."); Mackenzie v. Portuondo, 208 F. Supp.2d 302, 322 (E.D.N.Y. 2002) (holding that petitioner's state law merger doctrine claim was not cognizable on habeas review).

In addition, to the extent that Petitioner's challenge as to the kidnapping count might be read as alleging a Double Jeopardy violation, any such claim would be without merit. "The crimes of kidnapping and robbery each require proof of an element that is not required to prove the other." Duncan v. Griener, 97 Civ. 8754,1999 WL 20890, at *8 (S.D.N.Y. Jan. 19, 1999). Accordingly, "it does not constitute double jeopardy to be convicted of both crimes." Id. (citing Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932)).

Moreover, Petitioner's sentences for kidnapping and robbery are being served concurrently. (R at 1787-1789). As such, he is not even arguably being punished twice for the same crime and therefore, there has been no Double Jeopardy violation. See Fabian v. Phillips, 05 CV 0658, 2007 WL 1232071, at *5 (E.D.N.Y. Apr. 26, 2007) ("Petitioner was convicted in a single trial of Burglary in the First Degree, the lesser-included offense of Burglary in the Second Degree, and Robbery in the Second Degree, and was sentenced to concurrent prison terms. Therefore, Petitioner was neither punished more than once nor successively prosecuted for the same offense, and, accordingly, violation of the Double Jeopardy Clause has not resulted.").

### c.    Criminal Use of a Firearm

The jury found Petitioner guilty of Criminal Use of a Firearm in the First Degree. Pursuant to § 265.09 of the New York Penal Law, a person is guilty of Criminal Use of Firearm in the First Degree when he or she "commits any class B violent felony offense"

and either "possesses a deadly weapon, if the weapon is a loaded weapon from which a shot, readily capable of producing death or other serious injury may be discharged; or displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm."

The Appellate Division concluded that the second degree kidnapping conviction satisfied the class B violent felony offense requirement. Dinsio, 729 N.Y.S. 2d at 520. The court further "view[ed] the evidence as sufficient to support the jury's finding that the gun was loaded and operable." Id.

The holding that Kidnapping in the Second Degree is a Class B violent felony offense was well-supported under New York law. Indeed, paragraph (a) of subdivision one of section 70.02 of the New York Penal Law specifically includes second degree kidnapping in the definition of "Class B violent felony offense." With respect to the sufficiency of the evidence supporting this charge, Petitioner has failed to establish that the Appellate Division's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or that the decision was based on an unreasonable determination of the facts in the light of the evidence presented.

Officer Rauch testified that the gun was loaded (R at 674, 723) and operable on the night in question. (R at 723-727). Any rational juror could conclude based upon this evidence that each of the essential elements of the crime charged had been proven beyond a reasonable doubt.

For the foregoing reasons, this Court finds that Petitioner is not entitled to relief based upon his sufficiency of the evidence claim.

7.        **Ineffective Assistance of Appellate Counsel**

In his seventh and final claim, Petitioner alleges ineffective assistance of appellate counsel.   Petitioner raised this claim via a petition with the Appellate Division, Third Department for a writ of error coram nobis.   The Third Department denied the petition and the Court of Appeals was denied leave to appeal.

As noted above, to prevail on an ineffective assistance of counsel claim, petitioner must satisfy the two-part test set forth in Strickland.   466 U.S. 668.   First, the petitioner must demonstrate that his "counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. Second, he must show that counsel's deficient performance prejudiced his defense.   Id. at 692.

To demonstrate prejudice, Petitioner must prove that, but for counsel's errors, there is a reasonable probability that the outcome of the proceeding would have been different. Id. at 694. Failure to satisfy either requirement of Strickland 's test is fatal to a claim of ineffective assistance. See id. at 696 ("[T]here is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one.").

Although Strickland's two-pronged test was originally formulated to judge trial counsel's performance, it applies in the context of evaluating the effectiveness of appellate counsel's representation as well.  Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir.1994). To establish that appellate counsel failed to render effective assistance, a petitioner must do more than simply demonstrate that counsel omitted a non-frivolous argument, because appellate counsel is not required to raise all potentially colorable arguments. Id. (citing Jones v. Barnes, 463 U.S. 745, 754 (1983)).

31

Failure to raise an argument on appeal constitutes ineffective assistance only when the omitted issue is clearly stronger and more significant than those presented. See id. (citing Gray v. Greer, 800 F.2d 644, 646 (7th Cir.1986)). To establish the requisite level of prejudice resulting from appellate counsel's shortcomings, a petitioner must establish that there is a reasonable probability that the omitted "claim would have been successful before the [state's highest court]." Id. (quoting Claudio v. Scully, 982 F.2d 798, 803-05 (2d Cir.1992)); see also People v. La Hoz, 131 A.D.2d 154, 158 (App.Div. 1st Dept.1987) ("The burden lies with those raising the issue to rebut the presumption that counsel has been effective. The mere existence of an unraised issue will not suffice. A defendant must show that had the issue been raised a greater likelihood would exist that the judgment would have been reversed, or at least, modified. The right of appeal only guarantees review, not reversal."), appeal dism'd 70 N.Y.2d 1005 (N.Y.1988).

In the present case, Petitioner asserts two (2) main arguments in support of his ineffective assistance of appellate counsel.  Each argument will be addressed in turn.

### a.    Alleged Perjury/Manipulation of Evidence

First, Petitioner argues that appellate counsel improperly refused to raise the prosecutorial and judicial misconduct claims discussed above in Section III.B.1 & 2. Specifically, Petitioner contends that the record demonstrated that the police officer witnesses committed perjury and that "someone" rendered an allegedly critical portion of the audiotape recording inaudible.   Petitioner asserts that appellate counsel declined to advance these arguments so as to avoid offending New York State Senate Majority Leader Joseph Bruno, a relative of Rensselear County District Attorney Kenneth Bruno, and Mary Donahue, the former District Attorney and Lieutenant Governor of New York State.

32

As noted above, Petitioner has not offered sufficient evidence to establish that perjury was committed. Moore, 2005 WL 2665667, at *13 ("In order to prevail on this claim of prosecutorial misconduct, Petitioner first bears the burden of demonstrating that [witness']s incriminating testimony was actually, and intentionally, false."). Petitioner's attempts to highlight alleged inconsistencies in the testimony are insufficient as a matter of law to establish his conviction was obtained through perjury. See United States v. Monteleone, 257 F.3d 210, 219 (2d Cir.2001) ("A witness commits perjury if he gives false testimony concerning a material matter with the willful intent to provide false testimony, as distinguished from incorrect testimony resulting from confusion, mistake, or faulty memory. Simple inaccuracies or inconsistencies in testimony do not rise to the level of perjury."). In addition, Petitioner has not provided any proof that the audiotape was deliberately distorted or articulated any credible motive or explanation as to why any of the parties with access to the tape would have engaged in such conduct.

Accordingly, appellate counsel's decision not to raise these arguments did not fall below the objective standard of reasonableness. Indeed, counsel's refusal to raise the frivolous arguments advanced by Petitioner appears to have been prudent, in that advancing those arguments likely would have distracted from the meritorious arguments raised by counsel on appeal. See Brunson v. Tracy, 378 F. Supp.2d 100, 113 (E.D.N.Y. 2005) ("Appellate counsel's decision was therefore simply not ineffective, but prudent, as the raising of this frivolous argument may well have distracted from other, more meritorious issues urged by appellate counsel.").

Counsel's judgment with respect to the strategic selection of appellate issues appears to have been sound, in that he succeeded in persuading the Appellate Division to

33

reduce the degree of the robbery conviction and dismiss the criminal possession of a weapon charge. <u>Dinsio</u>, 729 N.Y.S. 2d at 519-20.

In any event, the arguments advanced by Petitioner lack legal and factual merit.  As such, Petitioner is unable to show that he was prejudiced by counsel's refusal to advance the arguments.  <u>See</u> <u>Mayo v. Henderson</u>, 13 F.3d 528, 534 (2d Cir.1994) ("To establish prejudice in the appellate context, a petitioner must demonstrate that 'there was a "reasonable probability" that [his] claim would have been successful ....' ") (alteration in original) (quoting <u>Claudio v. Scully</u>, 982 F.2d at 803); <u>see</u> <u>also</u> <u>Bolender v. Singletary</u>, 16 F.3d 1547, 1573 (11th Cir.1994) ("[T]he failure to raise nonmeritorious issues does not constitute ineffective assistance.").

### b.      Failure to Raise Potential Burglar Tool Prejudice

According to Petitioner, the burglar tools that were the subject of the criminal possession of burglar's tools charge were displayed in view of the jury during the entire trial.  Petitioner contends that appellate counsel unreasonably failed to argue for reversal of all of the convictions based upon the prejudice caused by the display of the burglar tool.

This Court finds that appellate counsel's decision in this regard did not fall below the objective standard of reasonableness and Petitioner is unable to demonstrate that he was prejudiced by the decision.  Given the substantial evidence supporting Petitioner's convictions, it is highly unlikely that the Appellate Division would have overturned the convictions based upon any arguable prejudice resulting from the display of the burglar's tools.  The tools related to a matter collateral to the critical events surrounding the robbery, kidnapping, and criminal use of a firearm charges, all of which occurred after the initial pursuit and seizure of Petitioner and James Dinsio. Moreover, there is no indication that

the display of the tools inflamed the passions of the jury or otherwise unfairly prejudiced their view of Petitioner.   Indeed, the fact that the jury *acquitted* Petitioner of the charge of criminal possession of burglar's tools is the best possible indication that the display of the tools during trial did not unfairly prejudice Petitioner.

Accordingly, this Court finds that Petitioner is not entitled to habeas relief based upon the alleged ineffective assistance of appellate counsel and this claim should be DENIED.

## IV. CONCLUSION

For the reasons stated above, the Court recommends Amil Dinsio's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied, and that his petition be dismissed.  Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, I recommend that no certificate of appealability issue. See 28 U.S.C. § 2253(c)(2) (1996).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

DATED:        September 24, 2007

Syracuse, New York

35

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.[15]

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY

---

[15]According to the New York State Department of Correctional Services' official website, Petitioner is presently incarcerated in the Wende Correctional Facility, therefore, the correct Respondent is Anthony Zon, the Superintendent of the Wende Correctional Facility. 28 U.S.C. § 2243. In light of Petitioner's *pro se* status, the fact that this will not prejudice Respondent, and in the interests of court efficiency, this Court will deem the Petition in case number 03-CV-779 amended to change the name of Respondent to Anthony Zon.

The Clerk of the Court is directed to terminate E.R. Donnelly as Respondent in the lead case, 03-CV-779, add Anthony Zon, Superintendent of the Wende Correctional Facility, as the new Respondent, and revise the caption of this case accordingly.

36

Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

September 24, 2007

_____

Victor E. Bianchini
United States Magistrate Judge